**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

ANDRES EDUARDO CUNDUMI ESCOBAR,

      *Petitioner*,

    v.

JASON BENZEL, Warden, Elizabeth Contract Detention Facility; et al.

      *Respondents*.

No. 26-cv-06456 (MEF)


**OPINION and ORDER**

---

\*   \*   \*

For the purposes of this brief Opinion and Order, the Court assumes virtually full familiarity with the facts and procedural history of this case.

\*   \*   \*

"It is a familiar rule of administrative law that an agency must abide by its own regulations." Fort Stewart Schs. v. Fed. Lab. Rels. Auth., 495 U.S. 641, 654 (1990); U.S. ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265-68 (1954).

"Failure on the part of [an] agency to act in compliance with its own regulations is fatal to such action." Frisby v. U.S. Dep't of Hous. & Urb. Dev., 755 F.2d 1052, 1055 (3d Cir. 1985) (citing Kelly v. R.R. Ret. Bd., 625 F.2d 486, 492 (3d Cir. 1980)). "Such actions are not in accordance with law." Id. (citing 5 U.S.C. § 706(2)(A)) (cleaned up).

Here, the relevant regulation is 8 C.F.R. § 212.5(e).

It provides that for certain noncitizens who have been paroled,[1] their parole status can only be revoked --- and they can

---

[1] That is, affirmatively allowed by the federal government to remain at liberty in the United States.

accordingly only be detained --- upon "written notice."  Id. § 212.5(e)(2)(i).

\*     \*     \*

In this case, the Petitioner,[2] who was previously paroled,[3] has now been detained by federal immigration officials.  See Petition for Writ of Habeas Corpus ("Petition") (ECF 1) ¶ 2.

He seeks release on the ground, among others, that federal officials did not follow their own regulations --- because they did not provide him with the required "written notice" that his parole was being taken away.  See Petition ¶¶ 4,35-39, 58-64; July 21, 2026 Letter (ECF 20) at 1-2.  Per the Petitioner, he is therefore detained now in violation of the laws of the United States --- and must accordingly be released.  See Petition ¶¶ 58-64.

The Respondents contend that a September 2023 notice to appear terminated the Petitioner's parole.  See July 20, 2026 Letter (ECF 19) at 1-2.

The premise of this is right: a notice to appear works as a charging document, see 8 C.F.R. § 1003.13, and a charging document can terminate parole.  See 8 C.F.R. § 212.5(e)(2)(i).

But the 2023 notice to appear in this case ("the NTA") simply does not say anything about termination of parole.  See June 3, 2026 Letter, Exhibit 4 ("NTA") (ECF 7-4).

And it does not implicitly say anything about parole termination either.

The NTA is addressed to the Petitioner.  It says: "[y]ou are an alien . . . who has not been . . . paroled."  Id. at 2.  The NTA also describes the Petitioner's entry into the United States, and then says: "[y]ou were not then . . . paroled after inspection by an Immigration Officer."  Id.

Telling a person that they have not been paroled makes little sense as a way of telling them they had been paroled --- but no longer.  But that is how the Respondents propose to read the NTA.

---

[2]  Andres Eduardo Cundumi Escobar.

[3]  See June 3, 2026 Letter (ECF 7) at 3; Petition ¶ 1.

2

Moreover, the parties agree that the Petitioner was given humanitarian parole under 8 U.S.C. § 1182(d)(5).  See June 3, 2026 Letter (ECF 7) at 3; Petition ¶ 1.

And humanitarian parole is often (though not always) granted after an asylum applicant has established a credible fear of persecution or torture.  See, e.g., Rodriguez v. Woosley, 823 F. Supp. 3d 718, 725 (W.D. Ky. 2026); Nayem v. LaRose, 2026 WL 915023, at *1 (S.D. Cal. Apr. 3, 2026); G.L. v. Warden of Cal. City Corr. Ctr., 2026 WL 1192171, at *1 (E.D. Cal. May 1, 2026; see also Mons v. McAleenan, 2019 WL 4225322, at *1-2 (D.D.C. Sept. 5, 2019).

So maybe the NTA terminated the Petitioner's humanitarian parole because it reflected a determination that he had not, in fact, established a credible fear?  No.  The opposite.  The NTA states that "an asylum officer . . . found that the [Petitioner] . . . demonstrated a credible fear of persecution or torture."  NTA at 2 (emphasis added).

Under these circumstances, it is hard to know how the NTA could serve as the required "written notice" that the Petitioner's parole was being ended.  Cf. Mendez-Gordillo v. Blanche, 2026 WL 1706914, at *3 (D. Nev. June 11, 2026) ("Mendez-Gordillo's notice to appear specifies, albeit erroneously, that he was not paroled to begin with.  Therefore, it cannot act as written notice of the termination of a parole that it does not acknowledge exists.  Mendez-Gordillo did not then receive written notice that his parole was being terminated.") (citing 8 C.F.R. § 212.5(e)(2)(i), which states that a "charging document [served on an alien] will constitute written notice of termination of parole, unless otherwise specified"); Alonso Morales v. Blanche, 2026 WL 2098165, at *3 (D. Nev. July 20, 2026) (concluding the same where the NTA charged the alien "with being present in the United States without being admitted or paroled") (emphasis added).

*    *    *

Bottom line: federal regulations indicate that the Petitioner could have his parole revoked only on "written notice."  But the NTA that the Respondents point to --- that does not provide notice as to parole termination.

3

Accordingly, the Petitioner is now detained in violation of the laws of the United States.  He shall be promptly released.[4]

IT IS on this 23rd day of July, 2026, **SO ORDERED.**

_____

Michael E. Farbiarz, U.S.D.J.

_____

[4]  The Court expresses no view here as to whether the Petitioner can later be detained by federal immigration officials if he is properly apprised of the termination of his parole.

4